1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10    KYLE AVERY,                              Civil No.    13cv2261 BTM (DHB)
      CDCR #E-67897,
11
                                    Plaintiff,   **ORDER:**
12
                                                 **1)  GRANTING DEFENDANTS'**
13                                               **MOTION FOR SUMMARY**
                                                 **JUDGMENT AS TO  PLAINTIFF'S**
14             vs.                               **RETALIATION CLAIMS BASED**
                                                 **ON HIS FAILURE TO EXHAUST**
15                                               **PURSUANT TO FED.R.CIV.P. 56**
                                                 **AND 42 U.S.C. § 1997e(a)**
16    D. PARAMO; FRANK RUFFINO;                  **(ECF No. 32)**
      JEFFREY BEARD; J. LOZANO;
17    KATHLEEN L. DICKINSON; TERRI              **AND**
      McDONALD; KATHLEEN ALLISON;
18    M.D. STAINER; T.L. GONZALEZ;              **2)  SUA SPONTE DISMISSING**
      ALBERT CHAMBERLIN; ALAN                   **UNIDENTIFIED AND UNSERVED**
19    KHAN; F. HADJADJ; G. BRADFORD;           **DOE DEFENDANTS PURSUANT**
      K. POOL; RUTLEDGE; GARAY;                 **TO FED.R.CIV.P. 4(m)**
20    JONES; CARTER; HODGE;
      ALLAMBY; BENYARD; and JOHN
21    DOES 1-10, CSP-RJDCF's Religious
      Review Committee,
22
                                  Defendants.
23

24    _____

25    **I.**     **Introduction**

26          Kyle Avery ("Plaintiff"), currently incarcerated at Richard J. Donovan

27    Correctional Facility ("RJD") in San Diego, California, is proceeding pro se, in this

28    civil rights action filed pursuant to 42 U.S.C. § 1983.

                                    -1-                        13cv2261 BTM (DHB)

1    Plaintiff seeks monetary damages against a host of California Department of

2    Corrections and Rehabilitation ("CDCR") and RJD officials, based on allegations that

3    they have violated his First and Fourteenth Amendment rights to free exercise of

4    religion, equal protection, and to be free of retaliation. *See* Compl. at 42-54, 56-58,

5    59-64. Plaintiff further seeks injunctive relief under the Religious Land Use and

6    Institutionalized Persons Act ("RLUIPA"). *See* Compl. at 27, 55, 66-69. Specifically,

7    Plaintiff contends Defendants have denied him various religious accommodations,

8    including a fence-line, fresh herbs, and running water for use in and around

9    ceremonial cites, as well as a diet sufficient to permit fasting rituals, which he argues

10   are provided to inmates of other faiths. *Id.* at 28-41. Plaintiff further claims

11   Defendants have retaliated against him for his advocacy and use of the administrative

12   grievance process to protect his rights. *Id.* at 48-50, 59-64.

13   **II.    Procedural Background**

14       On June 3, 2014, the Court granted Plaintiff leave to proceed *in forma pauperis*

15   pursuant to 42 U.S.C. § 1915(a), granted Plaintiff's Motion to Voluntarily Dismiss

16   Defendant Khan, and directed the U.S. Marshal to effect service upon the remaining

17   Defendants. *See* June 3, 2014 Order (ECF No. 9). On June 16, 2014, Plaintiff filed an

18   additional Notice of Voluntary Dismissal as to Defendants Garay, Jones, and Hodge

19   pursuant to FED.R.CIV.P. 41(a)(1) (ECF No. 12).

20       On September 3, 2014, the remaining Defendants[1] Allamby, Allison, Beard,

21   Benyard, Bradford, Carter, Chamberlin, Dickinson, Gonzalez, Hadjadj, Lozano, Pool,

22   McDonald, Paramo, Ruffino, Rutledge, and Stainer filed a pre-Answer Motion for

23   Summary Judgment pursuant to FED.R.CIV.P. 56 based on Plaintiff's alleged failure

24   _____

25       [1] While Plaintiff's Complaint also "includes space to supplement" ten members of RJD's Religious Review Committee ("RRC") as John Doe Defendants,

26   *see* Compl. at 15,  he has failed to identify those Does and has failed to execute service upon them within the 120 days provided by FED.R.CIV.P. 4(m).  Because the

27   Court gave notice to Plaintiff of his obligations in this regard in its June 13, 2014 Order, *see* ECF No. 9 at 7 n.3, and he has since failed to show good cause for his

28   failure to timely identify and serve these purported parties, they may be dismissed sua sponte pursuant to FED.R.CIV.P. 4(m).  *See Crowley v. Bannister*, 734 F.3d 967, 975-76 (9th Cir. 2013).

1  to exhaust administrative remedies as his retaliation claims (ECF No. 32).[2] Both the

2  Court and Defendants provided Plaintiff with notice of Defendants' Motion and

3  advised him of his obligation to submit evidence in response pursuant to *Rand v.*

4  *Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) and *Marella v. Terhune*,

5  568 F.3d 1024, 1028 (9th Cir. 2009) (ECF Nos. 32-2, 33). Plaintiff thereafter filed his

6  Motion in Objection (hereafter "Pl.'s Opp'n") (ECF No. 34), to which Defendants

7  have filed their Reply (ECF No. 35).

8        Having carefully reviewed these submissions, including all evidence offered in

9  both support and in opposition to Defendants' Motion, and having determined that no

10  oral argument is necessary pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby

11  GRANTS Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P 56 as

12  to Plaintiff's retaliation claims (ECF No. 32) for the reasons set out below.

13  **III.   Plaintiff's Allegations**

14        Plaintiff alleges he is Pagan-Wiccan, and holds a "sincere religious belief" in

15  the "earth-based" religious practices of the Wiccan & Asatru faiths, including

16  "ceremonial magick." *See* Compl., ECF No. 1, at 11,17, 20, 25, 26, 35, 36, 38-42.

17  He divides his Complaint into five separate claims.

18        First, Plaintiff claims Defendants Paramo, Ruffino, Lozano, Bradford, Hadjadj,

19  Beard, Pool, Dickinson, McDonald, Allison, Stainer, Gonzalez, and Chamberlin have

20  denied his First Amendment right to free exercise of his religion by refusing to

21  accommodate requests, made on behalf of himself, and other members of the

22  Pagan/Wiccan/Asatru population on RJD's Facility C, for a fence perimeter, fire pit,

23  water line, and herb cultivation, which Plaintiff contends are required and "imperative

24  to honor the religious ceremonies and rituals" of their faith. *Id.* at 17-22, 28-32, 42-

25  44, ("Claim One").

26  _____

27  [2]  Defendants have also filed a Motion to Consolidate this case, *Avery v.*
*Paramo, et al*, S.D. Cal. Civil Case No. 13cv2261 BTM (DHB), with a later-filed, yet

28  similar civil action filed by Plaintiff in *Avery v. Allamby, et al.*, S.D. Cal. Civil Case
No. 13cv3169 BTM (DHB) (ECF No. 37).  The Court will consider that Motion in a
separate Order.

Second, Plaintiff alleges Defendant Paramo, Ruffino, Lozano, Beard, Pool, Carter, Rutledge, and Benyard's[3] failure to provide the accommodations requested in Claim One is "discriminatory" and violates the Equal Protection Clause of the Fourteenth Amendment because Native American inmates are provided similar religious accommodations which Wiccans and Asatru practitioners are denied. *Id.* at 20-22, 45-50 ("Claim Two").

Third, Plaintiff contends Defendants Beard, Hadjadj, Ruffino, Bradford, Paramo, Pool, and Lozano[4] violated his First Amendment right to free exercise of his religion by refusing to accommodate his religious fasting practices. *Id.* at 35-41, 51-54. Specifically, Plaintiff alleges these Defendants have denied his requests for a monthly supply of honey, nuts, dried fruit, trail mix and "non-yeast (or) ergot bread or crackers," which are "non-fermentable items [needed] to sustain [his] physical health" during the "24 ... to 72 hours prior to ceremonies and magical practices of ritual magick." *Id.* at 35-36. Plaintiff claims that without these "specific accommodations," he has been "forced to abandon the tenets of his fasting religious practices or starve." *Id.* at 38, 51-54 ("Claim Three").

Fourth, Plaintiff seeks injunctive relief under RLUIPA as to "all Defendants" in their official capacities, based on claims that their refusals to provide him with "security in religious practices ... contingent ... upon the erection of a fence line," (Claim One) or to accommodate his requested religious dietary needs (Claim Three), have "caused [him] to abandon" his sincerely held religious practices against his will. *See* Compl. at 55 ("Claim Four").

Fifth, Plaintiff claims that Defendant Beard, who is the Secretary of the CDCR, has violated his First, Fourteenth, and RLUIPA rights by "delegating responsibility"

---

[3] Plaintiff originally included Defendants Khan, Jones, Garay, and Hodge in this claim, but they have since been dismissed them as parties. *See* ECF Doc. Nos. 8, 9, 12.

[4] Defendant Khan was originally included in this claim, but Plaintiff has voluntarily dismissed him. *See* ECF Doc. Nos. 8, 9.

to "create regulations and policy concerning religious accommodations and program

for inmates in CDCR's jurisdiction," to the Inmate Appeals Branch, Wardens

Advisory Group ("WAG"), and the Religious Review Committee ("RRC"), *see*

Compl. at 11, 13, and by "refusing to create" and/or include in Title 15 of the

California Code of Regulations, or the CDCR's Operations Manual ("DOM"),

policies or language which would protect the free exercise and equal access rights of

Pagan/Wiccan/Asatru practices by explicitly including them in the "earth-based"

practices already recognized for Native American inmates. *Id.* at 56-58 ("Claim

Five").

Finally, Plaintiff claims that he has acted as an "advocate" on his own and on

behalf of the "Wiccan & Asatru class" of inmates at RJD "at their request," "via

exhaustion of administrative remedies," and by pursuing "legal review by the courts"

since he arrived there on March 28, 2012. *See* Compl. at 59; Olson Decl. ¶ 5.  He

claims Defendants Carter, Rutledge, Allamby, Paramo, Benyard, Ruffino, and others[5]

either retaliated against him directly by "interrogating" him and "threatening" him

with discipline in order to "intimidat[e]" or "discourage" him from filing group

inmate appeals, or by failing to properly train, supervise, or discipline their

subordinate staff for retaliating against him.  *See* Compl. at 59-64 ("Claim Six").

Claims One, Two, and Four, in which Plaintiff alleges violations of  RLUIPA,

his First Amendment right to free exercise, and his Fourteenth Amendment right to

equal protection in relation to his requests for a Pagan/Wiccan/Asatru fence

perimeter, fire pit, water line, and herb cultivation, all appear to have been properly

exhausted via Plaintiff's CDCR 602 "Group Appeal," RJD Log No. 12-1960, filed on

July 4, 2012, and denied at the third level of administrative review on June 14, 2013.

*See* Compl., ECF No. 1-1, Pl.'s Ex. 2 at 24-47.

---

[5]  Plaintiff also includes Defendants Khan, Garay, Hodge, and Jones in his retaliation claim, but all those parties have been voluntarily dismissed. *See* ECF Nos. 8, 9, 12.

Claim Three, in which Plaintiff alleges violations of both RLUIPA and his First Amendment right to free exercise in relation to his dietary fasting needs, appears to have been properly exhausted via Plaintiff's CDCR 602 Inmate/Parolee Appeal, RJD Log No. 12-02497, filed on August 27, 2012, and also denied at the third level of administrative review on June 14, 2013. *See* Compl., ECF No. 1-1, Pl.'s Ex. 1 at 1-23; *see also* Briggs Decl., Ex. C, at 28-29, RJD Log No. 12-2460, Third Level Appeal Decision dated June 5, 2013.

Claim Five, in which Plaintiff challenges Secretary Beard's failure to enact or promulgate state-wide policies which specifically include Pagan/Wiccan/Asatru practices as within other "earth-based" religious programs specified within Title 15 and the DOM on First and Fourteenth Amendment grounds, also appears to have been properly exhausted via Plaintiff's CDC 602 Inmate/Parolee Appeal, RJD Log No. 13-01171, filed on March 25, 2013, and denied at the third level of administrative review on August 8, 2013. *See* Compl., ECF No. 1-1, Pl.'s Ex. 3 at 48-56.

## IV.    Defendants' Motion for Summary Judgment

While Defendants concede Plaintiff "has exhausted the prison appeals process for his claims related to a fenced-in worship area and a supply of nuts and honey," they seek summary judgment as to Plaintiff's claims of retaliation ("Claim Six") based on his failure to properly exhaust them before filing suit. *See* Defs.' Mem. of P&As in Supp. of Summ. J (ECF No. 32) at 6.

### A.    Legal Standards

#### 1.    Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement applies to all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (quotation marks omitted),

1    regardless of the relief sought by the prisoner or the relief offered by the process.

2    *Booth v. Churner*, 532 U.S. 731, 741 (2001).

3    "Proper exhaustion demands compliance with an agency's deadlines and other

4    critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme

5    Court has also cautioned against reading futility or other exceptions into the statutory

6    exhaustion requirement. *See Booth*, 532 U.S. at 741 n.6. Moreover, because proper

7    exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement

8    by filing an untimely or otherwise procedurally defective administrative grievance or

9    appeal. *See Woodford*, 548 U.S. at 90-93. Instead, "to properly exhaust administrative

10   remedies prisoners 'must complete the administrative review process in accordance

11   with the applicable procedural rules,'[ ]-rules that are defined not by the PLRA, but

12   by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007)

13   (quoting *Woodford*, 548 U.S. at 88). *See also Marella*, 568 F.3d at 1027 ("The

14   California prison system's requirements 'define the boundaries of proper

15   exhaustion.'") (quoting *Jones*, 549 U.S. at 218).

16   Because the failure to exhaust is an affirmative defense, Defendants bear the

17   burden of raising and proving its absence. *Jones*, 549 U.S. at 216; *Albino v. Baca*,

18   747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). "In the rare event that a failure to

19   exhaust is clear from the face of the complaint, a defendant may move for dismissal

20   under Rule 12(b)(6)." *Albino*, 747 F.3d at 1166. Otherwise, Defendants must produce

21   evidence proving the Plaintiff's failure to exhaust, and they are entitled to summary

22   judgment under Rule 56 only if the undisputed evidence, viewed in the light most

23   favorable Plaintiff, shows he failed to exhaust. *Id.*

24                   **2.    Rule 56 Summary Judgment**

25   Any party may move for summary judgment, and the Court must grant

26   summary judgment if the movant shows that there is no genuine dispute as to any

27   material fact and the movant is entitled to judgment as a matter of law. FED.R.CIV.P.

28   56(a) (quotation marks omitted); *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v.*

-7-                                                13cv2261 BTM (DHB)

*U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by: (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. FED.R.CIV.P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. FED.R.CIV.P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

When Defendants seek summary judgment based on the Plaintiff's failure to exhaust specifically, they must first prove that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted). If they do, the burden of production then shifts to the Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191.

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Albino*, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

**B.    Discussion**

In this case, no party disputes that the CDCR "has an administrative remedy" for inmate grievances. *See Williams*, 775 F.3d at 1191. No party further disputes that California's administrative grievance procedure is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days: (1) of the event or

decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. *See* CAL. CODE REGS., tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted); *Vaden v. Summerhill*, 449 F.3d 1047, 1049 (9th Cir. 2006); *see also* Decl. of R. Briggs in Supp. of Defs.' Mot. for Summ. J. (ECF No. 32-4) (hereafter "Briggs Decl.") at 2-3 ¶¶ 2-6.

A California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that [he] can demonstrate as having a material adverse effect upon his ... health, safety, or welfare." CAL CODE REGS., it. 15 § 3084.1(a). Since January 28, 2011, and during the times alleged in Plaintiff's Complaint, Title 15 of the California Code of Regulations requires three formal levels of appeal review. *See* Decl. of R. Olson in Supp. of Defs.' Mot. for Summ. J. (ECF No. 32-3) at 2 ¶ 2.

Thus, in order to properly exhaust, Plaintiff must, within 30 calendar days of the decision or action being appealed, or "upon first having knowledge of the action or decision being appealed," CAL. CODE REGS., tit. 15 § 3084.8(b), "use a CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested." *Id.* § 3084.2(a). The CDCR Form 602 "shall be submitted to the appeals coordinator at the institution." *Id.* § 3084.2(c), § 3084.7(a). If the first level CDCR Form 602 appeal is "denied or not otherwise resolved to the appellant's satisfaction at the first level," *id.* § 3084.7(b), Plaintiff must "within 30 calendar days ... upon receiving [the] unsatisfactory departmental response," *id.* § 3084.8(b)(3), seek a second level of administrative review, which is "conducted by the hiring authority or designee at a level no lower that Chief Deputy Warden, Deputy Regional Parole Administrator, or the equivalent." *Id.* § 3084.7(b), (d)(2). "The third level is for review of appeals not resolved at the second level." *Id.* § 3084.7(c). "The third level review constitutes the decision of the Secretary of the CDCR on an appeal, and shall be conducted by a designated representative under the supervision of the

1  third level Appeals Chief or equivalent. The third level of review exhausts

2  administrative remedies," *id.* § 3084.7(d)(3), "unless otherwise stated."[6] *Id.* §

3  3084.1(b); *see also* Olson Decl. ¶¶ 2-3.

4         Therefore, the only question in this case is whether Defendants have carried

5  their burden under Rule 56 to show there is no material dispute as to whether Plaintiff

6  did, in fact, exhaust available administrative remedies as to the retaliation claims he

7  alleges in Claim Six of his Complaint against Defendants Carter, Rutledge, Allamby,

8  Benyard, Paramo, and Ruffino before filing suit as is required by CAL. CODE REGS.,

9  tit. 15 § 3084, et seq. *See* Compl. at 59-64; *Williams*, 775 F.3d at 1191.

10              **1.    Defendants' Evidence**

11        In support of their Motion seeking summary judgment as to Plaintiff's

12  retaliation claims, Defendants have submitted the sworn Declarations of R. Olson,

13  RJD's Appeals Coordinator (ECF No. 32-3), and R. Briggs, the CDCR's Acting

14  Chief of the Office of Inmate Appeals (ECF No. 32-4). Both Olson and Briggs attest

15  as to the content of the Inmate Appeals Office's ("IAO") business records and files

16  containing "any appeals, including staff complaints," filed by Plaintiff from the time

17  of his transfer to RJD on March 28, 2012, and "all Third Level Inmate Appeals"

18  accepted "relating to allegations of retaliation by current Defendants in this action for

19  practicing his religion and advocating for his religious group by filing appeals."

20  Olson Decl. ¶ 5; Briggs Decl. ¶ 8. Attached to Briggs's Declaration are copies of ten

21  CDCR Form 602 Inmate grievances, filed by Plaintiff at RJD between October 1,

22  2012, and August 17, 2013, which he exhausted through the third level of

23

24

25

26        [6]  For example, "[a] second level of review shall constitute the department's
final action on appeals of disciplinary actions classified as 'administrative' as
27  described in section 3314, or minor disciplinary infractions documented on CDC
Form 128-A (rev. 4-74), Custodial Counseling Chrono, pursuant to section
28  3312(a)(2), and shall exhaust administrative remedy on these matters." CAL. CODE
REGS., tit. 15 § 3084.7(b)(1).

1   administrative review. *See* Briggs' Decl. at 4-6, ¶ 9(a)-(j) & Exs. A-J.[7] Defendants

2   offer these to show that while Plaintiff's "religious appeals," specifically those

3   "related to his requests for fenced-in worship area and a monthly supply of honey

4   nuts and fruit," were properly exhausted, *see* Defs.' Mem. of P&As' in Supp. of

5   Summ. J. at 32, citing Briggs' Decl., Ex. A (RJD Log No. 12-1960), Ex. C (RJD Log

6   No. 12-2460), and Ex. D (RJD Log No. 12-2497), none of these appeals, or any other

7   filed by Plaintiff through the third level of administrative review, included allegations

8   sufficient to put prison officials "on notice" that he was *also* claiming retaliation by

9   any Defendant still named as a party to this action. *Id.* at 14-17 (citing *Griffin v.*

10  *Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009)).

11         Both Olson and Briggs's Declarations also include descriptions of more than a

12  dozen additional CDCR Form 602 grievances initiated by Plaintiff during the same

13  time, which were withdrawn, abandoned, "screened out," "rejected," "cancelled," or

14  otherwise "not accepted" pursuant to CAL. CODE REGS., tit. 15 § 3084.6. *See* Olson

15  Decl. ¶ 7(a)-(m); Briggs Decl. ¶ 10(a)-(f). Also attached to Olson's Declaration are

16  copies of the only two of Plaintiff's appeals which Olson attests *did* include

17  allegations of retaliation:  RJD Log. No. 13-1816 and RJD Log No. 13-2820. *See*

18  Olson Decl. ¶ 6(m) & Ex. 1 at 15-37 ; *id.* ¶ 7(j) & Ex. 2 at 39-46.  Both these appeals

19  were "screened out" or "withdrawn," however. *Id.* Therefore, Defendants offer them

20  as proof that because neither was pursued through the third level of administrative

21  review, as required by CAL. CODE REGS., tit. 15 § 3084.1(b) and § 3084.7(d)(3),

22  neither is sufficient to show Plaintiff "properly" exhausted his administrative

23

24

25         [7]  These CDCR Form 602 Appeals were "accepted and processed," *see* Briggs
    Decl. ¶ 9(a)-(j), and designated RJD Log No. 12-1960, (*id.*, Ex. A at 9-18); Log No.
26  12-2967, (*id.*, Ex. B at 19-26); Log No. 12-2460, (*id.*, Ex. C at 27-41); Log. No. 12-
    2497, (*id.*, Ex. D at 42-49); Log No. 13-1171, (*id.*, Ex. E at 50-57); Log No. 13-0896,
27  (*id.*, Ex. F at 58-68); Log No. 13-1165, (*id.*, Ex. G at 69-76); Log No. 13-2005, (*id.*,
    Ex. H at 77-87); Log No. 13-1198, (*id.*, Ex. I at 88-95); Log No. 13-3017, (*id.*, Ex. J
28  at 96-110). *See also* Briggs's Decl. Ex. K at 111-115, Inmate/Parolee Appeals
    Tracking System - Level III ("IATS"), for Kyle Avery, CDCR #E-67897.

13cv2261 BTM (DHB)

1  remedies as to any claims of retaliation. *See Jones*, 549 U.S. at 218 (quoting

2  *Woodford*, 548 U.S. at 88).

3  **2.  Plaintiff's Rebuttal Evidence**

4  In his Opposition, Plaintiff does *not* rebut Defendants' evidence or argue that

5  screened out CDCR 602 Appeal Log No. 13-1816 or Log No. 13-2820 were, in fact,

6  sufficient to demonstrate proper exhaustion. *See* Pl.'s Opp'n (ECF No. 34). Nor does

7  Plaintiff claim or offer any of his own evidence to show that the grievance procedure

8  was rendered unavailable to him as to these incomplete appeals. *See Williams*, 775

9  F.3d at 1191-92. Instead, Plaintiff claims he exhausted his claims by giving "judicial

10  notice of retaliations to Defendants D. Paramo and CRM Ruffino" in a letter he

11  presented to them on April 5, 2013, which included claims of both past and

12  "anticipated" future interference by RJD custodial staff with his "intent to exercise

13  protected conduct and to advocate and litigate." *See* Pl.'s Opp'n (ECF No. 34) Ex. 3

14  at 148-153.  Plaintiff further claims two other CDCR 602 appeals, RJD Log No. 13-

15  2451, filed on August 6, 2013, and RJD Log. No. 13-3017, filed on September 22,

16  2013, are "in conjunction" also sufficient to show his retaliation claims were properly

17  exhausted. *See* Pl.'s Opp'n at 10 & Exs. 1 & 2.

18  **a.  Plaintiff's Letter**

19  First, to the extent Plaintiff contends an April 5, 2013 letter he wrote to

20  Defendants Paramo and Ruffino is sufficient to show proper exhaustion of his

21  retaliation claims, Article 8 of CAL. CODE REGS., tit. 15, § 3084 through § 3084.9

22  provide otherwise. *See* § 3084.1 ("The appeal process is intended to provide a remedy

23  for inmates ... with identified grievances and to provide an administrative mechanism

24  for review of departmental policies, decisions, actions, conditions, or omissions that

25  have a material adverse effect on the welfare of inmates and parolees."); *Jones*, 549

26  U.S. at 218 ("proper exhaustion" occurs when prisoners "'complete the administrative

27  review process in accordance with the applicable procedural rules' ... that are defined

28

1    not by [§ 1997e(a)], but by the prison grievance process itself.") (quoting *Woodford*,

2    548 U.S. at 88).

3          Thus, Plaintiff's April 5, 2015 letter to the Warden and other prison officials,

4    which he submits as Exhibit 3 to his Opposition (ECF No. 34, at 148-153), neither

5    excuses his failure to submit a CDCR Form 602 appeal as to the retaliation claims

6    alleged in his Complaint, nor does it relieve him from proceeding through all the

7    administrative steps required to properly exhaust those claims via California's

8    grievance process. *See Woodford*, 548 U.S. at 91, 93 (exhaustion under the PLRA

9    requires "compliance with an agency's deadlines and other critical procedural rules");

10   *Panaro v. City of North Las Vegas*, 432 F.3d 949, 954 (9th Cir. 2005) (participation

11   in internal affairs investigation did not suffice to exhaust administrative remedies);

12   *Wilson v. Wann*, No. CIV S-06-1629 GEB KJM P, 2008 WL 4166886, at *2 (E.D.

13   Cal. Sept. 8, 2008) (finding plaintiff's letters to the Office of the Inspector General,

14   Office of Internal Affairs, and the Warden were insufficient to show exhaustion); *see*

15   *also Lees v. Felker*, 2009 WL 2824862, *5 (E.D. Cal. Sept.1, 2009) (noting that

16   plaintiff's letter to warden was not an alternative method to the inmate grievance

17   process for exhausting administrative remedies); *Macias v. Zenk*, 495 F.3d 37, 44 (2d

18   Cir. 2007) (informal complaints did not exhaust); *Singh v. Goord*, 520 F. Supp. 2d

19   487, 495 (S.D.N.Y. 2007) (letter to warden did not exhaust).

20                  **b.    RJD Log No. 13-2451 & RJD Log No. 13-3017**

21         Next, Plaintiff argues that CDCR Form 602 Log No. 13-2451 and CDCR Form

22   602 Log No. 13-3017 are sufficient to show exhaustion of the retaliation claims

23   alleged in his Complaint under § 1997e(a) "because retaliation was mentioned" in

24   those appeals.  *See* Pl.'s Opp'n (ECF No. 34) at 7-10. In their Reply, however,

25   Defendants claim neither of these appeals are sufficient to show proper exhaustion

26   because they describe "entirely different [acts of] retaliatory conduct" arising at

27   different times than the retaliatory acts Plaintiff asserts against Defendants Carter,

28

1   Rutledge, Allamby, Paramo, Benyard, and Ruffino in his Complaint.[8] *See* Defs.'

2   Reply (ECF No. 35) at 2-7. The Court agrees.

3       In Claim Six of his Complaint, Plaintiff claims generally that he has been

4   "retaliated against by administrative staff, the chaplain[']s staff, and the prison[']s

5   custodial staff" "since his arrival at RJD," in an "attempt to dis[]courage" his

6   religious advocacy. *See* Compl. at 59. He does give several "examples" of purported

7   acts of reprisal involving Defendants Carter, Rutledge, Allamby, and Ruffino, but he

8   mentions only one specific date:  May 14, 2013. *Id.* at 60.

9       On May 14, 2013, Plaintiff claims Defendant Carter "removed [him] from his

10  housing unit," cuffed him, and escorted him to the Facility C Program Office, where

11  he was placed in an "interrogation-type setting" before Muslim Chaplain Khan and

12  Defendants Rutledge and Allamby. Plaintiff describes the incident as "an intervention

13  team aimed at intimidation." *Id.* at 60. Plaintiff contends he "was told his 602s and

14  advocacy for Wiccans & Asatru was not wanted and [he] was ordered to stop." *Id.*

15  Plaintiff further claims Khan "threatened to write a disciplinary report against [him] if

16  he continued to advocate via 602s," and told him "both the Asatru and Wiccans did

17  not desire to have [him] advocating for them," and, in fact, the "Asatru inmates ...

18  wanted to assault [him]." *Id.* at 60, 62. Plaintiff contends he knew this was "false"

19  because "numerous Wiccans & Asatru inmates" had signed his "class" grievances,

20  *id.*, at 60-61, and because if Plaintiff's safety was threatened they would "have him

21  placed in Ad-Seg." *Id.* at 62.

22      Plaintiff further claims that "upon submitting" unspecified grievances,

23  Defendant Ruffino, RJD's Community Resource Manager, on a "number of

24  individual" occasions, "contacted" unidentified "custody and chaplain staff to have

25  them threaten [Plaintiff] with disciplinary actions." *Id.* at 48. Plaintiff claims

26  Ruffino's actions as an "administrator designee" also "set the impression" with

27

28      [8] As noted above, Plaintiff's Complaint also includes allegation of retaliation
    by Defendants Kahn, Garay, Jones, and Hodge, but Plaintiff has voluntarily dismissed
    those officials as parties in this matter.  *See* ECF Nos. 8, 9, 12.

custodial staff that other "retaliatory tactics were justified." *Id.* Plaintiff also describes Defendant Correctional Officer Carter as "always approaching him and other Pagan inmates in a physically threatening and verbally aggressive fashion," and that he would "desecrate" Pagan religious grounds by "kicking rocks, spitting ..., dislodging alter stones ... and destroy[ing] sacred arrangements" in what Plaintiff alleges was "an attempt to retaliate against [their] free religious exercise observances and Plaintiff's advocacy for it." *Id.* at 49. In addition, Plaintiff asserts Sergeant Rutledge "ke[pt] telling Pagans ... Plaintiff [wa]s causing this or that problem" in an attempt to "create division" and was "constantly reaffirming his staff['s] confiscation of [Pagans'] religious property," in order to "create discomfort for ... Plaintiff who [was] trying to get a better established basis for Pagan programming." *Id.*

Thus, Plaintiff's only *specific* claims of retaliation are alleged to have occurred on May 14, 2013, in RJD's Facility C Program Office, and involve current Defendants Carter, Rutledge, and Allamby. *See* Compl. at 60-63. While his pleading also contains global claims of harassment occurring on other unspecified occasions, Plaintiff fails to tether those acts, or any other Defendant named in Claim Six, to any particular instance of protected conduct. *See Pratt v. Rowland*, 65 F.3d 802, 807-08 (9th Cir. 1995) (to state a claim for retaliation, Plaintiff must allege a specific link between the claimed act of retaliation and the exercise of a constitutional right); Compl. at 48-49, 64.

Nevertheless, Plaintiff contends he exhausted his retaliation claims by simply asking that "it be stopped" in CDCR Form 602 Log No. 13-2451, which he filed on August 6, 2013, and in CDCR Form 602 Log No. 13-3017, filed on September 22, 2013. *See* Pl.'s Opp'n at 9, 17.[9]  The Court will consider each in turn.

---

[9]  Plaintiff also cites CAL. CODE REGS., tit. 15 § 3084.2(a) to show that "the law does not require [him] to name each person who retaliated in grievances." *See* Pl.'s Opp'n at 15, 17.  While this was formerly true, *see Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010), section 3084.2(a) was amended effective January 28, 2011 to require that prisoners indeed "list all staff member(s) involved," and "describe their involvement in the issue" in their CDCR Form 602s.  *See* CAL. CODE REGS., tit. 15 § 3084.2(a) (2014).

First, in CDCR Form 602 Log No. 13-2451, Plaintiff challenged the validity of a CDCR 128-A Custodial Chrono, issued against him on August 1, 2013, by Lt. A. Canada.[10] *See* Pl.'s Opp'n (EC. No. 34), Ex. 1 at 24. In the CDCR 128-A, Canada reported that Plaintiff had violated a "direct order by Correctional Lt. A. Allamby to not engage in the transportation ... of the Wiccan religious artifacts to and from the 'C' Program - 'C' Chapel." *Id.*, Ex. 1 at 56. Canada issued the CDC 128-A to Plaintiff as a "written warning that further violations to the direct orders given to him," "pursuant to the adjudication of Rules Violation Report ("RVR") Log #FC-13-245," would "result in a more progressive disciplinary action [being] taken." *Id.*

In his CDCR Form 602, Plaintiff requested that Canada's "128-A custodial chrono  [be] vacated and completely removed from [his] C-File," because the "items [at] issue [were] [his] personal religious property," that he had "authorization to convey the religious property by checking them out as needed for [Wiccan] services & or personal use," and that neither Lt. Canada nor Allamby were "at liberty to dictate" whether Plaintiff may act as "a legal lia[i]s[o]n" or "advocate for [him]self and [his] Wiccan or Pagan class." *Id.* at 25. Plaintiff cited both his "First Amendment right," and his "protected conduct right" as an "advocate for [his] class," and concluded by requesting "staff stop fishing for reasons to retaliate via RVR & 128s." *Id.*

On August 17, 2013, Correctional Lieutenant J. Clarke interviewed Plaintiff regarding the claims he raised in CDCR Form 602 Log. No. 13-2451. G. Stratton, on behalf of Defendant Warden Paramo,[11] found that because Plaintiff had been found guilty of falsifying state records by Lt. Allamby on May 28, 2013, as charged in Rules Violation Report Log No. FC-13-245, and as a result had been "removed from the position of Wiccan Representative/Liaison in charge of religious artifacts,"

---

[10] Canada is not named as a Defendant is this case and Plaintiff's Complaint includes no mention of him.

[11] Neither Clarke nor Stratton are named as Defendants in this case and Plaintiff's Complaint also includes no mention of them.

13cv2261 BTM (DHB)

1    Canada's 128-A was "appropriate." Therefore, Plaintiff's CDCR Form 602 Appeal

2    Log. No. 13-2451 was denied at the second level of review. *Id.* at 53-55.[12]

3    On August 20, 2013, Lieutenant J. Clarke issued Plaintiff another RVR, CDC

4    115 Log No. FC-13-446, this time charging him with disobeying orders in violation

5    of CAL. CODE REGS., tit. 15 § 3005(b), in relation to the August 17, 2013 interview he

6    conducted regarding Canada's CDC 128-A chrono and Plaintiff's CDCR Form 602

7    Appeal Log No. 13-1451. *See* Pl.'s Opp'n (ECF No. 34), Ex. 2 at 105-112. Clarke

8    reported that during his August 17, 2013 interview, Plaintiff told him "he did not

9    recognize any CDCR staff's authority to prevent him from obtaining" the religious or

10   "controlled" artifacts he had been "banned" from "obtaining, transporting or having

11   in his possession," and therefore he "intended to keep on taking possession of them at

12   future times as he saw fit." *Id.* at 105. Based on these statements, on September 1,

13   2013, Correctional Lieutenant Sosa found Plaintiff guilty of the disciplinary offense

14   of disobeying orders, assessed Plaintiff 30 days credit forfeiture, and referred him to

15   the UCC/ICC for placement into privilege/work group "C." *Id.* at 108.

16   Second, Plaintiff filed CDCR 602 Log No. 13-3017 on September 22, 2013,

17   challenging his guilt finding in CDC 115 Log No. FC-13-446. *Id.* at 100. In this

18   appeal, Plaintiff repeated his claims that he was entitled to possess his own

19   "personal" religious based on a "higher authority," alleged there was insufficient

20   evidence to show he had disobeyed any orders, claimed he was denied due process,

21

22

23

24   _____
     [12]  While the Second Level Appeal Decision in CDCR Form 602 RJD Log No.
25   13-2451 dated August 19, 2013, indicates that "this issue may be submitted for a
     Director's Level of Review if desired," *see* Pl.'s Opp'n (ECF No. 34) Ex. 1 at 55,
26   Plaintiff does not allege to have appealed further, and he has not submitted a copy of
     any Director's Level Decision as to Log No. 13-2451. In his Declaration in Support
27   of Defendants' Motion, however, Briggs avers that Plaintiff did attempt to further
     appeal RJD Log No. 13-2451 on October 24, 2013, but it was "rejected or screened
28   out" on November 15, 2013, "because the issue was exhausted at the Second Level of
     review." *See* Briggs Decl. (ECF No. 32-4) ¶ 10(d) at 7; *see also* CAL. CODE REGS., tit.
     15 § 3084.7(b)(1).

and also claimed that "the basis of [Clarke's] RVR [was] retaliatory in nature," and

constituted a "reprisal[] for filing 602's per 15 CCR § 3084.1(d)." *Id.* at 101.

Defendant Allamby interviewed Plaintiff at the second level of administrative

review of CDCR Form 602 Log No. 13-3017 on November 4, 2013. However, it was

RJD's Chief Deputy Warden K.A. Seibel who found no evidence of any due process

violation "relative to RVR Log No. FC-13-466," and who denied Plaintiff's appeal at

the second level of administrative review. *Id.* at 102-04.  On April 15, 2014, however,

Appeal Log No. 13-3107 was granted in part by Defendant Pool at the third level of

administrative review. *Id.* at 98-99. Specifically, RVR Log No. FC-13-446 was

ordered to be "reissued/reheard" in order to ensure RJD officials fully complied with

CAL. CODE REGS., tit. 15 § 3320(l), which required the Senior Hearing Officer (Lt.

Sosa) to conclude the hearing by informing Plaintiff of the findings and disposition of

the charge. *Id.* at 99. At neither the second or third levels of administrative review did

any official address the claims of retaliation Plaintiff included in his CDCR Form 602

Log No. 13-3107; instead only Plaintiff's due process claims were considered. *See id.*

at 98-112.

### 3.  Analysis

Based on the evidence as presented, no genuine material dispute exists as to

whether Plaintiff has properly exhausted all available administrative remedies as to

the retaliation claims alleged in Claim Six of his Complaint. Defendants have

produced sufficient evidence to show that he has not; and Plaintiff has failed to

"come forward with evidence" to show "that there is something in his particular case

that made the existing and generally available administrative remedies effectively

unavailable to him." *Albino*, 747 F.3d at 1172; *Williams*, 775 F.3d at 1191.

Specifically, the Court finds that while Plaintiff points to both CDCR Log No.

13-2451 and CDCR Form 602 Log No. 13-3017 to show proof of exhaustion, those

grievances clearly involve alleged incidents of retaliation, first arising on August 1,

2013, and again on August 20, 2013, which even when considered in the light most

favorable to Plaintiff, are simply not alleged to be part of the retaliation claims he asserts in *this* suit.[13] *See Albino*, 747 F.3d at 1166 (noting that if "undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."); *see also Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[A] prisoner must exhaust his administrative remedies *for the claims contained within his complaint* before that complaint is tendered to the district court.") (emphasis added).

Moreover, while both of Plaintiff's CDCR Form 602 Log Nos. 13-2451 and 13-3017 did include allegations of retaliation based on the exercise of Plaintiff's First Amendment rights, neither included sufficient detail to put the Defendants in *this* case (Carter, Rutledge, Allamby, Paramo, Benyard, and Ruffino) "on notice" of Plaintiff's specific claims of retaliation against them, nor provided prison officials a fair opportunity to address or resolve his retaliation claims against these Defendants prior to court intervention. *See e.g., McCollum v. Cal. Dept. of Corr. and Rehabilitation*, 647 F.3d 870, 876 (9th Cir. 2011) (finding Wiccan prisoner's grievance alleging religious discrimination in the form of unequal access to worship places and sacred items was insufficient to put prison officials on notice of Plaintiff's separate challenge to the prison's failure to establish a paid Wiccan chaplaincy).

The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones*, 549 U.S. at 218. The California Code of Regulations requires that Plaintiff's CDCR Form 602s "list all staff members involved," and "describe their involvement in the issue under appeal," including the "dates of the staff member's involvement." CAL. CODE

---

[13] The Court takes judicial notice, however, that RJD CDCR Form 602 Log Nos. 13-2451 and 13-3017 *do* appear to exhaust Plaintiff's claims of retaliation against Lt. Allamby, as well as against two other RJD Lieutenants, Canada and Clarke, who are *not* named as parties in this case, but who are all named as parties in Plaintiff's related suit, *Avery v. Allamby, et al.*, S.D. Cal. Civil Case No. 13-cv-3169-BTM (DHB). *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (A court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

13cv2261 BTM (DHB)

REGS. tit. 15, § 3084.2(3). Further, he must "describe the specific issue under appeal and the relief requested," and "state all facts known and available to him." *Id.* 3084.2(a), (a)(4).[14] An appeal generally "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 822-23  (9th Cir. 2010).

The primary purpose of a grievance is to notify the prison of a problem. *Griffin*, 557 F.3d at 1120 (quotation marks and citations omitted); *accord Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014); *Akhtar v. Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012). Thus, Plaintiff's CDCR 602 Log. Nos. 13-2451 and 13-3017 would suffice to satisfy § 1997e(a)'s exhaustion requirement if Defendants Carter, Rutledge, Allamby, Paramo, Benyard, and Ruffino were included in a list of staff members involved, if they "describe[d] their involvement in the issue under appeal," and if they included the dates of each staff member's involvement. *See* CAL. CODE REGS. tit. 15, § 3084.2. Because the undisputed evidence in the record before the Court shows that Log. Nos. 13-2451 and 13-3017 lacked any of those required details, Defendants Carter, Rutledge, Allamby, Paramo, Benyard, and Ruffino could not have been alerted to the nature of the wrong for which Plaintiff now seeks redress against them. *See Sapp*, 623 F.3d at 824; *Akhtar*, 698 F.3d at 1211.

**V.    Conclusion and Order**

Accordingly, the Court **ORDERS** that:

1)    No genuine dispute exists to show Plaintiff properly exhausted the retaliation claims alleged in Claim Six of his Complaint; therefore, Defendants' Motion for Summary Judgment as to those claims is **GRANTED** pursuant to FED.R.CIV.P. 56 and 42 U.S.C. § 1997e(a) (ECF No. 32);

---

[14]    Before January 28, 2011, CDCR's regulations merely required prisoner to include a description of the problem and the action requested on the CDCR Form 602. *See* § 3084.2(a) (2010); *Sapp*, 623 F.3d at 824 (finding that at the time Sapp filed his grievance, 15 CAL. CODE REGS., § 3084.2 did <u>not</u> require him to identify prison officials by name in order to exhaust).

2)      Defendant John Does 1-10 are **DISMISSED** as parties in this matter sua sponte pursuant to FED.R.CIV.P. 4(m); and

3)      Defendants are **ORDERED** to file a responsive pleading to all claims remaining in Plaintiff's Complaint within the time provided by FED.R.CIV.P. 12(a)(4)(A).


DATED:  August 18, 2015

BARRY TED MOSKOWITZ, Chief Judge
United States District Court